**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JANET GUZMAN, JENNIFER ZHARINOVA, KATARINA VAN DERHAM, MARIANA DAVALOS, ROSA ACOSTA, YODIT YEMANE a/k/a JODIE JOE and STEPHANIE RAO,<br><br>Plaintiffs,<br><br>- against -<br><br>REVOLUTION NIGHT CLUB, LLC d/b/a MONACO BR f/k/a MAMBO DANCE CLUB /f/k/a EL SITIO BR,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs JANET GUZMAN, JENNIFER ZHARINOVA, KATARINA VAN DERHAM, MARIANA DAVALOS, ROSA ACOSTA, YODIT YEMANE a/k/a JODIE JOE and STEPHANIE RAO, (collectively, "Plaintiffs"), file this Complaint against REVOLUTION NIGHT CLUB, LLC d/b/a MONACO BR f/k/a MAMBO DANCE CLUB /f/k/a EL SITIO BR ("Defendant") respectfully allege as follows:

**BACKGROUND**

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, REVOLUTION NIGHT CLUB, LLC d/b/a MONACO BR f/k/a MAMBO DANCE CLUB /f/k/a EL SITIO BR located at 17378 Airline Hwy, Prairieville, Louisiana 70769 (hereinafter referred to as the "Night Club" or "SITIO").

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the

Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of Louisiana's Right to Privacy; d) Violation of Right to Publicity and/or Allen Toussaint Legacy Act La. R.S. 51:470.1 et. seq.; e) Defamation; f) Violation of LUPTA, La. R.S. 51:1401-18; g) Negligence, Gross Negligence, and Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.    In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

### **JURISDICTION & VENUE**

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.    This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.    Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.    According to publicly available records, Defendant REVOLUTION NIGHT CLUB, LLC, is a limited liability company formed under the laws of the state of Louisiana, with its principal place of business located at 17378 Airline Hwy, Prairieville, Louisiana, 70769. Upon information and belief, REVOLUTION NIGHT CLUB, LLC operates MONACO BR f/k/a MAMBO DANCE CLUB /f/k/a EL SITIO BR, which is located at 17378 Airline Hwy, Prairieville, Louisiana 70769.

8.    Venue is proper in the United States District Court for the Middle District of Louisiana because Defendant's principal place of business is located in Prairieville, Louisiana, Ascension County.

9.    A significant portion of the alleged causes of action arose and accrued in Prairieville, Louisiana and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Prairieville, Louisiana.

## PARTIES

*Plaintiffs*

10.    Plaintiff JANET GUZMAN ("GUZMAN") is a well-known professional model, and a resident of Los Angeles County, California.

11.    Plaintiff JENNIFER ZHARINOVA ("ZHARINOVA") is a well-known professional model, and a resident of Los Angeles County, California.

12.    Plaintiff KATARINA VAN DERHAM ("DERHAM") is a well-known professional model, and a resident of Los Angeles County, California.

13.    Plaintiff MARIANA DAVALOS ("DAVALOS") is a well-known professional model, and a resident of Columbia.

14.    Plaintiff ROSA ACOSTA ("ACOSTA") is a well-known professional model, and a resident of Los Angeles County, California.

15.    Plaintiff YODIT YEMANE a/k/a JODIE JOE ("YEMANE") is a well-known professional model, and a resident of Los Angeles County, California.

16.    Plaintiff STEPHANIE RAO ("RAO") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendant*

17.    Defendant, REVOLUTION NIGHT CLUB, LLC d/b/a MONACO BR f/k/a MAMBO DANCE CLUB /f/k/a EL SITIO BR, is a limited liability company formed under the laws of the state of Louisiana and registered to conduct business in Louisiana. During times relevant to this action, REVOLUTION NIGHT CLUB, LLC operated MONACO BR f/k/a MAMBO DANCE CLUB /f/k/a EL SITIO BR.

18.    Service of process may be perfected upon Defendant REVOLUTION NIGHT CLUB, LLC d/b/a MONACO BR f/k/a MAMBO DANCE CLUB /f/k/a EL SITIO BR by serving the registered agent for service of process, Vilas Law Firm, APLC, who can be located at 6525 Perkins Rd, Baton Rouge, LA 70808.

## **FACTUAL ALLEGATIONS**

19.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

20.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

21.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

22.     In the case of each Plaintiff, this apparent claim was false.

23.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

24.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

25.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

26.     GUZMAN is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared

on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.[1]

27.    That we know of, GUZMAN is depicted in the photos in Exhibit "A" to promote SITIO on a related social media account. These Images were intentionally altered to make it appear that Guzman was either an employee working at SITIO, that she endorsed SITIO, or that she was otherwise associated or affiliated with SITIO.

28.    GUZMAN has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.    ZHARINOVA is a highly successful model and actress. Zharinova has modeled for runway, print, commercial, and theatrical jobs for Great Clips, Chevrolet Malibu, 24 Hour Fitness, Caesar's Palace, Sprint, Levi's, Aveda, Target, and Guess among others.

30.    That we know of, ZHARINOVA is depicted in the photos in Exhibit "B" to promote SITIO on related social media accounts. These Images were intentionally altered to make it appear that Zharinova was either an employee working at SITIO, that she endorsed SITIO, or that she was otherwise associated or affiliated with SITIO.

31.    ZHARINOVA has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.    VAN DERHAM is a successful model, actress, philanthropist, and entrepreneur.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, VIVA GLAM. Her well-respected status gets her invited as a judge of model contests and beauty pageants around the globe. She has over 210,000 Instagram followers, over 11,000 Twitter followers, and over 190,000 Facebook followers.

33.    That we know of, VAN DERHAM is depicted in the photos in Exhibit "C" to promote SITIO on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Derham was either an employee working at SITIO, that she endorsed SITIO, or that she was otherwise associated or affiliated with SITIO.

34.    VAN DERHAM has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.    DAVALOS established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Bésame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning

capabilities have increased dramatically over 500,000 Instagram, Twitter, and Facebook followers.

36.     That we know of, DAVALOS is depicted in the photo in Exhibit "D" to promote SITIO on its Facebook page. This Image was intentionally altered to make it appear that Davalos was either an employee working at SITIO, that she endorsed SITIO, or that she was otherwise associated or affiliated with SITIO.

37.     DAVALOS has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.     ACOSTA started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,000 Twitter followers.

39.     That we know of, ACOSTA is depicted in the photos in Exhibit "E" to promote SITIO on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Acosta was either an employee working at SITIO, that she endorsed SITIO, or that she was otherwise associated or affiliated with SITIO.

40.     ACOSTA has never been employed at Defendant's establishment, has never been

7

hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.    YEMANE is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

42.    That we know of, YEMANE is depicted in the photos in Exhibit "F" to promote SITIO on its Facebook page. These Images were intentionally altered to make it appear that Yemane was either an employee working at SITIO, that she endorsed SITIO, or that she was otherwise associated or affiliated with SITIO.

43.    YEMANE has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

44.    RAO who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

45.    That we know of, RAO is depicted in the photo in Exhibit "G" to promote SITIO on its Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at SITIO, that she endorsed SITIO, or that she was otherwise associated or

affiliated with SITIO.

46.     RAO has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

47.     Defendant operates (or operated, during the relevant time period,) a Night Club, where it is (or was) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

48.     Defendant owns, operates, and controls SITIO's social media accounts, including its Facebook, Twitter, and Instagram accounts.

49.     Defendant used SITIO's Facebook, Twitter, and Instagram accounts to promote SITIO's business, and to attract patrons.

50.     Defendant did this for its own commercial and financial benefit.

51.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at SITIO, endorsed SITIO, or was otherwise associated or affiliated with SITIO.

52.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed SITIO to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

53.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by SITIO, and at no point have any of the Plaintiffs ever endorsed SITIO or otherwise been affiliated or associated with SITIO.

54.     All of Defendant's activities, including their misappropriation and republication of

Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

55.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

56.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

57.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

58.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

59.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

60.     Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed SITIO.

61.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

62.     In addition, Plaintiffs allege that the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with SITIO.

63.     At no point was any Plaintiff ever contacted by any Defendant, or any

representative of any Defendant, to request the use of any of Plaintiffs' Images.

64.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

65.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including SITIO's website, Twitter, Facebook, or Instagram accounts.

66.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

### FIRST CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

67.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

68.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

69.     Defendant used Plaintiffs' image to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

70.     Thus, this was done in furtherance of Defendant's commercial benefit.

71.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identity to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggests the characteristics of their product or service that requires an effort of imagination by the consumer to be understood as

descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

72.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

73.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

74.     Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment and advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

75.     Despite the fact that Defendant was always aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

76.     Defendant knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

77.     Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

78.     As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

79.     Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

80.     Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

81.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

82.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

83.     Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

84.     Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

85.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

86.    Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

87.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, participate in events at Defendant's establishment, and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

88.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

89.     Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

90.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

91.     Defendant's wrongful conduct as described herein was willful.

92.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

93.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

94.     The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

95.     Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

96.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of Louisiana's Right to Privacy)

97.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

98.    All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored Internet and social media posts used by Defendant to market and promote Defendant. As described more specifically for each Plaintiff above, some of the photographs used to create Defendant's advertisements were taken professionally and a release was signed at the time of the photo shoot. However, no Plaintiff ever released its Right to Privacy, Publicity, or the right to any third party to sell its image to any third-party not a party to the original release without its permission.

99.    Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their rights to publicity. The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

100.    Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiffs' portfolio in order to allow her to market herself to new clients. In these cases, no release was signed, and no copyright interest was asserted. In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendant could use her image and likeness to market, promote, or endorse its business. Based on these rights, Plaintiffs assert the Causes of Action described below.

101.    As set forth herein, Defendant has violated by invading Plaintiffs' privacy, misappropriating their likenesses, and publishing on Defendant's marketing materials the altered Images of Plaintiffs which made it appear as though Plaintiffs were employed by Defendant, or endorsed the REVOLUTION NIGHT CLUB, LLC. Defendant misappropriated the Plaintiffs' image and likeness for the value associated with them and for its own benefit. All of the images misappropriated by Defendant were republished many times in different formats to substantially different audiences on many occasions. Each publication is a new violation of Plaintiffs' rights. The appropriation was neither incidental nor for a newsworthy purpose; rather, the images were

misappropriated by Defendant, or third parties acting on their behalf, for their own benefit because of the commercial standing, reputation, and other values associated with the Plaintiffs' image and likeness.

102.    At all relevant times, Defendant's internet, social media, and collateral materials were used by Defendant for advertising and trade purposes.

103.    Defendant's internet, social media, and collateral materials were designed to attract business to Defendant and generate revenue for Defendant.

104.    Upon information and belief, Defendant's use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

105.    At no point did Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' image and likeness on Defendant's internet, social media, and collateral materials were or anywhere else.

106.    Defendant was at all relevant times aware that it never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium in order to promote Defendant.

107.    At no point did Defendant ever compensate Plaintiffs for its use of their Images.

108.    The unauthorized usage of Plaintiffs' Images painted Plaintiffs in a false light in that it suggested to the public that Plaintiffs were employed at Defendant and/or affiliated or endorsed Defendant, a fact which Defendant knew was untrue.

109.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

110.    Due to Defendant's violation of Plaintiffs' rights of privacy and publicity under Louisiana law, Plaintiffs have been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

111.    In addition, the aforementioned action of the Defendant has caused, and continue to cause, irreparable loss, damage and injury to the Plaintiffs' good will, marketability and

reputation, as such Plaintiffs hereby requests an Order permanently enjoining Defendant from violating Plaintiffs' right to privacy and publicity by publishing without authorization images depicting them.

112.    In addition, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of their statutory rights to privacy and publicity.

## **FOURTH CAUSE OF ACTION**
### **(Violation of Right to Publicity and/or Allen Toussaint Legacy Act La. R.S. 51:470.1 et. seq.)**

113.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

114.    Plaintiffs allege that they have an individual property right to use their identity, image and likeness for commercial purposes as they see fit.

115.    Plaintiffs' image, likeness and/or identity are recognizable in Plaintiffs' image and likeness.

116.    Plaintiffs allege that Plaintiffs' image and likenesses published by Defendant misappropriate the identity of Plaintiffs because by publishing said images, Defendant has unauthorizedly communicated unto the public that Plaintiffs are in some way affiliated with Defendant.

117.    Plaintiffs did not provide consent, authorization, permission, or otherwise enter into any agreements with Defendant allowing for the publication of Plaintiffs' image and likeness.

118.    Defendant, at all relevant points in time, had actual knowledge that it did not have any consent, authorization, permission, or an agreement with Plaintiffs to publish Plaintiffs' image and likenesses of Plaintiffs.

119.    Defendant unauthorized usage of Plaintiffs' image and likeness was done to promote and advertise its business, Defendant, in Louisiana, at the expense of Plaintiffs.

120.    Defendant unauthorized usage of Plaintiffs' identity, image and likeness has caused harm to Plaintiffs.

121.    Plaintiffs seek reasonable attorney's fees, costs, and expenses in asserting these rights against Defendant.

## FIFTH CAUSE OF ACTION
### (Defamation)

122.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

123.    As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote Defendant to the general public and potential clientele.

124.    Defendant's publication of Plaintiffs' image and likeness constitutes a false representation and/or implication that Plaintiffs were either employed at Defendant, endorsed Defendant, or that they had some affiliation with Defendant.

125.    None of these representations were true.

126.    In publishing Plaintiffs' altered image and likeness, it was Defendant's intention to create a false impression to the general public that Plaintiffs worked for or endorsed Defendant's business.

127.    Defendant was negligent, and/or acted with reckless disregard as to the high probability of Plaintiffs' image and likeness false portrayals of Plaintiffs, in publishing Plaintiffs' image and likeness because it knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

128.    In the alternative, Defendant published Plaintiffs' image and likeness with actual malice because it knew that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

129.    Despite Defendant's knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for itself.

130.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Louisiana law because said publication falsely accuses, and/or creates the implication based on the context of its publication, that Plaintiffs of having acted in a manner – i.e., working for or endorsing Defendant's business which would subject Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiffs of confidence and friendly intercourse in society.

131.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation and libel per se under Louisiana law because the unauthorized publication of said Image creates the false implication of Plaintiffs' association with Defendant, and said publication would tend to injure each Plaintiff in her trade, business, and profession.

132.    Because of Defendant's publication of Plaintiffs image and likeness, any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she appeared to be working for or endorsing Defendant's business, an inference which Defendant's publication of Plaintiffs' image and likeness create.

133.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation and libel per se under Louisiana law because, insofar as said publication falsely portrays each of the Plaintiffs as an employee of Defendant's business, it imputes unchastity and/or immorality to them.

134.    Each new publication of Plaintiffs' images by Defendant constitutes a separate publication. Each republication is a separate violation that causes a continuing injury to Plaintiffs. Each publication constitutes a continuous tort. To date, Defendant continues to maintain Plaintiffs' image and likenesses of the Plaintiffs on its social media accounts. Defendant has engaged and continues to engage in continued injury-producing conduct.

135.    Defendant's publication of Plaintiffs' image and likeness caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy-five thousand ($75,000), exclusive of punitive and exemplary damages.

136.    In addition, the aforementioned actions of the Defendant have caused, and continue to cause, irreparable loss, damage and injury to the Plaintiffs' good will, marketability and reputation, as such Plaintiffs hereby request an Order permanently enjoining Defendant from violating Plaintiffs' right to privacy and unauthorizedly publishing images depicting them.

### SIXTH CAUSE OF ACTION
**(Violation of LUTPA, La. R.S. 51:1401-18)**

137.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

138.    Defendant operated Defendant's website and social media accounts in order to promote Defendant, to attract clientele thereto, and to thereby generate revenue for Defendant.

139.    As such, Defendant's operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendant in Louisiana.

140.    Defendant published Plaintiffs' image and likeness on Defendant's website and social media accounts to create the false impression that Plaintiffs worked for or endorsed, or were otherwise affiliated, associated, or connected with Defendant.

141.    As such, Defendant's intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant.

142.    Defendant's false advertising, misrepresentations, and breaches of its duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in Louisiana, and to Plaintiffs.

143.    Defendant's false advertising, misrepresentations, and breaches of its duties to Plaintiffs and the public was deceptive, in that it possessed the tendency or capacity to mislead, or

created the likelihood of deception, affecting members of the public in Louisiana and thereby causing injury to the public, and to Plaintiffs.

144.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendant's false advertising, misrepresentations, and breaches of its duties to Plaintiffs and the public.

145.    Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of Louisiana and caused injury to the Plaintiffs as complained of herein.

146.    Defendant's advertising practices offend the public policy of Louisiana insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, and intentional misrepresentations of Plaintiffs' affiliation with Defendant, all for Defendant's commercial benefit.

147.    Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with Defendant.

148.    Defendant's advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with Defendant.

149.    There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

150.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' image and likeness on its website and social media accounts for its own commercial benefit, each of the Plaintiffs' reputations were injured, and each of the Plaintiffs' ability to market themselves as models was injured.

151.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' image and likeness for its own commercial benefit, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

152.    Plaintiffs are further entitled to an award of attorney's fees, costs, and judicial interest against and taxed to Defendant pursuant to LUTPA.

## SEVENTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and Respondeat Superior)

153.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

154.    Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

155.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

156.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

157.    Defendant further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

158.    Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property,

publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

159.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Louisiana law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

160.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

161.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
**(Conversion)**

162.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

163.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

164.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for its own use and financial gain.

165.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
**(Unjust Enrichment)**

166.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

167.    As set forth in detail above, Defendant published Plaintiffs' image and likeness to promote Defendant's business to the general public and potential clientele.

168.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs worked for or endorsed Defendant's business.

169.    Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially from their purported association with, employment of, and/or endorsement by Plaintiffs.

170.    Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' image and likeness.

171.    Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to Defendant's business.

172.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

173.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

### TENTH CAUSE OF ACTION
**(Quantum Meruit)**

174.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

175.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

176.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

177.    Defendant has availed itself of the benefit of being associated with Plaintiffs, making it appear to potential customers that Plaintiffs either work at or endorse Defendant's business, or are otherwise affiliated with the same, without compensation.

178.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a)  For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b)  For an order permanently enjoining Defendant from using Plaintiffs' Images to promote SITIO's Night Club;

(c)  For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d)  For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e)  For such other and further relief as the Court may deem just and proper.

Dated: November 10, 2025.

**/s/ John V. Golaszewski**
John V. Golaszewski
New York Bar No. 4121091
Pro Hac Vice Application Pending
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law

**AND**

*/s/ Stephen M. Kepper*

Stephen M. Kepper
LA Bar Number: 34618
**INTELLECTUAL PROPERTY
CONSULTING, LLC**
400 Poydras St., Suite 1400
New Orleans, LA. 70130
Tel: (504) 322-7166
Fax: (504) 322-7184
skepper@iplawconsulting.com

Attorneys for Plaintiffs